WILLIAM DOSSETT *v.* FIRST NAT. FIRE INS. CO.

(*Knoxville.* September Term, 1917.)

**INSURANCE. Fire policies. Proofs of loss. False affidavits.**
Evidence *held* to show that insured made false affidavit in his
proof of loss as to the value of the merchandise destroyed, so as
to avoid the policy under a clause rendering it void if insured
was guilty of fraud or false swearing.

FROM CAMPBELL

Appeal from the Chancery Court of Campbell County.
—HUGH G. KYLE, Chancellor.

J. N. RUSSELL, for appellant.

CORNICK, FRANTZ, McCONNELL & SEYMOUR, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of
the Court.

This bill was brought in the chancery court of
Campbell county to recover on two policies of insurance in the defendant company, one for $1,200 and the
other for $600, the first dated August 6, 1915, and
the second September 2d of the same year. The two
policies were issued on a stock of goods owned by the
complainant, at his store near Jacksboro, in Campbell
county.

The chancellor found the loss to be $950, and rendered a judgment for that amount, with interest from June 20, 1916, the date of the filing of the bill, making the recovery $1,002.25. The defendant company appealed, and has assigned errors.

Several defenses were made in the answer but we shall consider only one. That is based on the following condition, which appears in both policies:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof, or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The defendant specified, in the answer, several instances of alleged false swearing, among others, the affidavit to the proofs of loss. We shall consider only this last one. As to it we think the defense is fully made out.

The proof of loss contains, among other things, the following language:

"The actual cash value of each specific subject thus set out and described by aforesaid policy at the time of loss, and the actual loss and damage by said fire to same and for which claim is hereby made, were, as set forth, under Schedule B, attached hereto and made part hereof."

Schedule B is thus entitled:

"Statement of actual cash value of property insured and loss and damage thereto."

Under this the following is written:

"One stock of general merchandise consisting of groceries, dry goods etc., $2200. Inventory cannot be correctly given as building and entire stock were consumed by this fire."

This proof of loss is signed by the complainant and affidavit made thereto as follows:

"State of Tennessee, County of Campbell.

"Personally appeared before me the day and date above written, William Dossett, signer of the foregoing statement, who made solemn oath to the truth of same, and that no material facts were withheld of which the said insurance company should be advised.

"[Signed] J. W. RUSSELL, Notary Public."

—with his notarial seal attached. A similar affidavit was made to the proof of loss under the $600 policy, with a similar schedule.

At the time the foregoing affidavit was made the complainant was in possession of his ledger, page 162 of which contains a statement of the goods that were in his store. The various items added up show a value of $1,856.96. This purports to be the total amount of goods in the stock. The same book shows his credit sales out of this stock to have been $340. It is conceded by him that he made cash sales out of the same stock, $108.29. The two sums, added together, make $448.29. This sum, deducted from the

whole amount of goods purchased, leaves the sum of $1,408.67, the largest possible amount that could have been in stock when the fire occurred. This, deducted from the $2,200 shows a difference of $791.33, an overstatement of more than a third. That is to say, in swearing to his proof of loss, he made a misstatement to the extent of $791.33, which was more than a third of the $2,200, which he falsely represented he had in stock at the time the fire occurred.

As we have stated, the complainant's ledger showed these items. Being in possession of this book, and having access to its contents, he must be presumed to have known what it showed, and to have willfully made a statement contrary to the contents.

The figures which foot $1,856.96 are shown to have been incorrect to the extent of $179.10, so that the whole amount of the stock which he had purchased or placed in the house from the time he began business to the date of the fire was that much less than $1,856.96; that is to say, deducting $179.10 from $1,856.96, we have $1,677.86 as the true value of his goods. Deducting from this sum $340 for the credit goods sold, there is left $1,337.86. Deducting from this the admitted cash sales, $108.29, there is left only $1,229.57 as the amount of goods in the house at the time the fire occurred, which amount shows a difference between that and $2,200 of $970.43.

But really under the weight of the evidence the cash sales should be figured at $3 per day for the one hundred and four days he was in business, excluding

Sundays; that is to say, $3 a day for eighty-nine days, which would be $267. Deducting this from $1,337.86, we have left $1,070.86 as the true amount of goods in the house at the time of the fire. Deducting this from $2,200 a difference is shown of $1,129.14, as the amount of misrepresentation contained in the proof of loss.

But giving the complainant the benefit of every doubt, the same result would follow. It appears from the record that he made a mistake in footing up his goods on page 162 of the ledger. Instead of making the true amount of $1,856.96, he made a footing of $2.081.17. But if we allow this figure and deduct therefrom $340 for credit sales of these goods, we have left $1,741.17. Deduct from this the cash sales which he concedes, $108.29, we have $1,632.88. Deduct this latter sum from $2,200, a difference is shown of $567.12, which is more than one-fourth. So that, even allowing the complainant to have been honestly mistaken as to the $179.10 error in the list of goods, and also an honest mistake as to the total of the list, that is to say, giving him the benefit of every doubt, he is shown to have misrepresented in his proof of loss the amount of goods in stock at the time of the fire more than one-fourth.

We see no escape from holding that the complainant knowingly made a false affidavit when he swore to his proof of loss, and under the terms of the policy quoted he cannot recover. A decree will therefore be entered,

reversing the chancellor's decree and dismissing the bill and taxing the complainant with all the costs.

We add, by way of caution, that we are not to be understood as holding that innocent, or mere mistaken, representations of value, sworn to in a proof of loss, will avoid the policy. Our decision is confined to those known, willful, and fraudulent misrepresentations sworn to, of the class to which the case before us belongs.